**STATE of Iowa, Appellee,**

v.

**Darrell M. GRAVENISH, Appellant.**

No. 92–1283.

Supreme Court of Iowa.

Jan. 19, 1994.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., and Kevin H. Clefisch, County Atty., for appellee.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Defendant Darrell Gravenish appealed his conviction for vehicular homicide. The court of appeals reversed and remanded for new trial on the ground Gravenish's consent to a blood test was not informed, and, therefore, should have been suppressed. On the State's petition for further review, we vacate the court of appeals' decision and affirm the judgment of the district court.

Shortly after 1:30 a.m. on January 3, 1992, Darrell Gravenish drove his car—without headlights—on the wrong side of a rural Iowa highway. He collided head-on with a vehicle driven by Kerri Kautman, killing her instantly. Gravenish, saved by an air bag, was transported to a local hospital for treatment of minor injuries, including a mild concussion. Deputy Sheriff John Tschirgi, believing Gravenish had been driving under the influence of alcohol, went to the hospital to request a blood sample pursuant to Iowa Code section 321J.6 (1991). Tschirgi waited until doctors had treated Gravenish before speaking with him. Gravenish appeared alert, although he had little memory of the accident. Gravenish's treating physician confirmed that he was well oriented and had "full medical capacity to make decisions."

Before requesting the blood specimen, Tschirgi advised Gravenish that he had been in an accident and that another person had

been hurt. Gravenish inquired about the condition of the other driver. Tschirgi replied that she was "not too good." He knew, however, that Kautman was dead. Tschirgi then read the implied consent advisory form to Gravenish, stating that Iowa law allowed him to request a blood specimen because of Gravenish's participation in an accident involving personal injury or death. Gravenish stated that he understood the advisory; he then read and signed the form. A nurse withdrew the sample, which revealed a blood alcohol concentration of .13. By extrapolation, Gravenish's blood alcohol concentration at the time of the accident was .18 to .19. He was charged with vehicular homicide in violation of Iowa Code section 707.6A.

Prior to trial, Gravenish moved to suppress the blood test results. He argued that his consent was not voluntary or knowing because it was given as a result of Tschirgi's misleading statement regarding Kautman's condition. The district court denied the motion. A jury convicted Gravenish of vehicular homicide. Gravenish appealed, contending that the district court erred in refusing to grant his motion to suppress.

We transferred the case to the court of appeals which reversed the conviction and remanded. The court found that Gravenish had the mental capacity to voluntarily consent, but held that the consent was coerced by Tschirgi's untruthful answer about Kautman's condition. The matter is now before us on the State's application for further review.

■ I. *Scope of review.* When a person who has submitted to a chemical test asserts that the submission was not voluntary, we evaluate the totality of the circumstances to determine whether the decision was freely made or coerced. *State v. Knous,* 313 N.W.2d 510, 512 (Iowa 1981). Our review is de novo. *State v. Owens,* 418 N.W.2d 340, 342 (Iowa 1988). Although we are not bound by the trial court's factual findings, we give considerable weight to the court's assessment on the question of voluntariness. *State v. Payton,* 481 N.W.2d 325, 328 (Iowa 1992).

■ II. *Impact of officer's statement.* It is well settled that for a consent to be valid, it must be voluntary and uncoerced. *State v. Holland,* 389 N.W.2d 375, 381 (Iowa 1986). When coercion is alleged, the State must prove by a preponderance of the evidence the absence of undue pressure or duress. *State v. Stanford,* 474 N.W.2d 573, 575 (Iowa 1991). Statements are voluntary if they are the product of essentially unconstrained choice, made by a defendant whose will was not overcome or whose capacity for self-determination was not crucially impaired. *Payton,* 481 N.W.2d at 328.

Gravenish contends, and the court of appeals held, that Tschirgi's statement concerning Kautman's condition deprived Gravenish of crucial information bearing on his consent to withdrawal of blood. Without a full understanding of the repercussion of his decision, Gravenish argues, his consent could not have been voluntary. Our review of the record convinces us, however, that the argument is without legal or factual basis.

■ Deception by law officers—while never condoned—will not, standing alone, render consent involuntary as a matter of law. *State v. Hall,* 297 N.W.2d 80, 89 (Iowa 1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). Assuming for the sake of argument that Tschirgi's comment on Kautman's condition was in fact deceptive, such statement is merely one factor bearing on the question of voluntariness. *Id.; State v. Oliver,* 341 N.W.2d 25, 28 (Iowa 1983). Other factors to consider include the defendant's age and prior criminal history, if any; whether he was under the influence of drugs or alcohol; whether he ably understood and responded to questions; his physical and emotional reaction to interrogation; and whether physical punishment was used or threatened. *Payton,* 481 N.W.2d at 328–29.

■ The record reveals that Gravenish was thirty-one years old at the time of this accident. Although he suffered a mild concussion and other minor injuries, attending medical personnel uniformly described him as alert and oriented upon admission to the hospital. He responded appropriately to questions posed and remained calm through-

out the proceedings. The request for a blood specimen was neither prolonged nor accompanied by threats of harm for failure to comply. Indeed, a friend of Gravenish stood by throughout Tschirgi's reading of the consent advisory and subsequent withdrawal of blood. The entire process lasted only ten minutes.

Gravenish contends that he consented to the test only because he feared loss of his driving privileges. To that extent, he claims no lack of understanding concerning the consequences of any failure to cooperate as set out in the implied consent form he read and signed. His argument implies that, had he known Kautman's true condition, he would have withheld consent. Nothing in the record, however, bears out this contention.

Despite the officer's lack of candor, Gravenish was alert to the gravity of the situation. As we have noted in a similar context, it "strains credulity" to suggest that Gravenish, in submitting to the blood test, did not know that the results might be used against him at some point. *Knous,* 313 N.W.2d at 512. The pressure created by that knowledge would be the same whether Gravenish knew the other driver was dead or only seriously injured.

In summary, it appears to us that Gravenish's consent was a reasoned and informed decision to comply with the officer's request. We agree with the district court that it was not a decision coerced by misinformation.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**