**STATE of Iowa, Appellee,**

v.

**Stanley Allen BERNHARD, Appellant.**

No. 01–1872.

Supreme Court of Iowa.

Feb. 26, 2003.

**470**

Andrew P. Nelson of Meyer, Lorentzen & Nelson, Decorah, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, and Kevin H. Clefisch, County Attorney, for appellee.

CARTER, Justice.

Defendant, Stanley Allen Bernhard, appeals from his conviction of OWI. He contends that a chemical test of his blood-alcohol level should have been suppressed because his consent to the withdrawal of his blood was obtained by an unwarranted threat of license revocation. The court of appeals rejected that contention and affirmed defendant's conviction. We agree with that disposition. We affirm the decision of the court of appeals and the judgment of the district court.

On February 2, 2001, defendant's four-wheel-drive pickup truck slid off the roadway south of Postville. The vehicle ended up overturned in the ditch. Emergency medical and fire personnel soon arrived at the scene, as did officers of the Iowa State Patrol. These officers found an open bottle of peppermint schnapps beside the truck and detected an odor of that liquor in the interior of the cab.

Defendant was taken by ambulance to a hospital in Waukon. He arrived at the hospital emergency room immobilized in a C-collar and on a backboard. He was complaining of pain in his right arm, shoulder, and left hip. No head injuries or neurological injuries were observed. He was able to move all four extremities. The emergency-room nurse described defendant's condition as very agitated, nervous, and beset with rapid speech patterns.

Soon after defendant's arrival at the hospital, Trooper Greg Rude of the Iowa

State Patrol appeared and spoke to him in the emergency room. At this time, medical personnel were in the room attending to defendant's injuries. Trooper Rude detected the odor of liquor on defendant's breath. He advised defendant that he had come to get a blood sample and then proceeded to read an advisory to defendant from a form that is regularly used for the initiation of the implied-consent procedure for chemical testing.[1] Trooper Rude did not deliver a copy of the implied-consent form to defendant nor did defendant ever sign it. Trooper Rude wrote on the form "unable to sign being treated for injuries." The district court found that this action on Trooper Rude's part was warranted in order to avoid disrupting defendant's medical treatment.

A nurse was present during the time that Trooper Rude was in the emergency room. She testified that following Trooper Rude's reading of the implied-consent admonition defendant extended his arm and allowed her to draw a sample of blood. At the suppression hearing, defendant testified that he did not actually hear what Trooper Rude was reading. He stated, however, that comments made to him by the nurse made him aware that a refusal to consent to a chemical test would result in the loss of his license. He testified that he consented to a withdrawal of blood in order to avoid that sanction.

Trooper Rude took possession of the blood sample obtained in the hospital. That sample was later tested at a laboratory and revealed a concentration of 208 grams of alcohol in 100 milliliters of blood. The district court denied defendant's request to suppress the results of this chemical test. That evidence was made a part

of the record, subject to defendant's objection, in a stipulated bench trial resulting in defendant's conviction of OWI, first offense. Other facts and circumstances that bear on this appeal will be considered in connection with our discussion of the legal issues presented.

### I. *Whether the Results of Chemical Testing of Defendant's Blood Should Have Been Suppressed.*

▮ The statement that was read to defendant included the following:

The Implied Consent Law requires that a peace officer advise the person of the following:

Refusal to submit to the withdrawal of a body specimen for chemical testing will result in revocation of your privilege to operate a motor vehicle for one year if you have not previously been revoked within the previous twelve years under the implied consent or drunk driving laws of this state, or for two years if you have one or more revocations within the previous twelve years. If you are under age 18, the revocation will be for the above periods, or until you reach age 18, whichever is longer.

Defendant correctly notes that under the provisions of Iowa Code section 321J.6 (1999) a refusal to provide a sample of blood is not a basis for a license revocation. That statute provides:

The peace officer shall determine which of the three substances, breath, blood, or urine, shall be tested. Refusal to submit to a chemical test of urine or breath is deemed a refusal to submit, and section 321J.9 [providing for license revocation] applies. *A refusal to submit to a chemical test of blood is not deemed*

---

1. Language of the implied-consent advisory has not been made the subject of an administrative rule; however, the language that was used in the present case appears to be the

same as that which was before this court in the earlier case of *State v. Kentner,* 562 N.W.2d 431, 432 (Iowa 1997).

*a refusal to submit,* but in that case, the peace officer shall then determine which one of the other two substances shall be tested and shall offer the test.

Iowa Code § 321J.6(2) (emphasis added).

Had defendant refused to consent to a withdrawal of blood, the officer would have had to request either a breath sample or a urine sample and in that case a refusal to provide either would have resulted in a revocation of defendant's license pursuant to Iowa Code section 321J.8(1). That statute provides:

> If the person refuses to submit to the test, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.9.

Iowa Code § 321J.8(1). Section 321J.9 provides for a varying length of revocation depending on the subject's prior history of license revocations.

Defendant urges that, because his consent to providing a sample of blood was obtained by an unwarranted threat of license revocation, the results of the chemical test should have been suppressed. In advocating this disposition he relies on our decision in *State v. Kjos,* 524 N.W.2d 195 (Iowa 1994). In that case the defendant was advised more than two hours following his arrest that he must agree to a chemical test or face license revocation. Actually, Iowa Code section 321J.6(2) provides that "[i]f the peace officer fails to offer a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321J.9." Based on this statute, we concluded that Kjos had been misinformed concerning the consequences of refusing a chemical test. *Kjos,* 524 N.W.2d at 197. We held that suppression of the chemical test result was the proper remedy because "[o]nly in this way can a defendant's right to refuse a test offered more than two hours after arrest be preserved." *Id.*

We are convinced that defendant's reliance on *Kjos* in the present case is misplaced. Unlike the defendant in *Kjos,* Bernhard was required by law to submit to a chemical test or have his license revoked. Although we recognize that the general admonition concerning license revocation that was read to defendant was misleading when given with respect to a request for blood, it was correct within the context of the complete statutory procedure that defendant was facing. At the time this admonition was given, the statutory procedure had not yet run its course.

Trooper Rude elected to first request a sample of blood. Because defendant consented to that request the inquiry went no further. If, however, defendant had refused to provide a sample of blood the implied consent procedure would have merely shifted to a request for a urine or breath sample. Defendant would have been required to provide a sample of one of those substances or face the revocation of his license. Defendant conceded at the suppression hearing that he was motivated to agree to a blood test because of the desire not to lose his license. We find no reason to assume that his choice would have been different had he been requested to provide a sample of one of the other two substances. Nor is there reason to believe that a chemical test of an alternative substance would not have revealed a similar concentration of alcohol in defendant's system. Consequently, the only real detriment that may have befallen defendant was unwittingly consenting to a blood test when he may have preferred one of the alternative tests. We do not view that detriment as sufficient to warrant the sup-

pression of the results from the chemical testing of his blood.

We made it clear in *State v. Gravenish*, 511 N.W.2d 379 (Iowa 1994), that not every inaccurate depiction by law enforcement officers that might bear on a subject's election to submit to chemical testing is a basis for suppressing the test results. *Gravenish*, 511 N.W.2d at 381. Our review of the district court's finding on this issue is de novo. *Id.* The ultimate question is whether the decision to comply with a valid request under the implied-consent law is a reasoned and informed decision. *Id.* In applying this standard, we conclude that defendant's consent to a chemical test was voluntary. The district court correctly denied the motion to suppress.

## II. *Absence of a Warrant.*

Defendant argues that the procedure under which his blood was withdrawn was violative of his rights under the Fourth Amendment to the United States Constitution because of the absence of a warrant. We have recognized that the procedure outlined in our implied-consent law, Iowa Code § 321J.6, is consistent with Fourth Amendment protections notwithstanding the absence of a warrant. *State v. Palmer*, 554 N.W.2d 859, 861 (Iowa 1996); *State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991). The validity of the procedure presupposes that there are reasonable grounds to believe that the person subjected to chemical testing has been operating a motor vehicle while under the influence and that one of the seven conditions specified in section 321J.6(1) are present. In the present case, there were reasonable grounds to believe that defendant had been operating a motor vehicle under the influence based on the open liquor bottle found beside the vehicle and the odor of alcohol that Trooper Rude detected on defendant's breath. In addition, one of the seven conditions that gives rise to implied-consent testing is that the person has been involved in a motor-vehicle accident resulting in personal injury. Iowa Code § 321J.6(1)(b). That occurred when defendant's vehicle slid off the roadway.

## III. *Other Issues.*

A. *Lack of a written request.* Defendant urges that, based on our decision in *State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975), the request for chemical testing under the implied-consent law was invalid because it was not made in writing. We need not decide whether the method used for requesting a sample of blood in the present case was sufficient to satisfy the writing requirement recognized in *Richards*. *See State v. Meissner*, 315 N.W.2d 738, 740 (Iowa 1982) (recognizing that reading request from written form is tantamount to a written request). The defendant did not raise an issue challenging a lack of written notice in his suppression motion in the district court. The district court gave no consideration to that issue. Moreover, when defendant later filed a posttrial motion requesting additional findings, he continued to make no claim of, or reference to, a lack of written consent. That issue is not before us for review.

B. *Sufficiency of the evidence.* Although defendant urges that the stipulated evidence was insufficient to sustain his conviction, a reading of his written argument reveals that this claim is premised on the suppression of the chemical-test results. Because we have concluded that those results need not be suppressed, the results of chemical testing provide substantial evidence in the record to sustain the conviction. We have considered all issues presented and conclude that the decision of the court of appeals and the

judgment of the district court should be affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**