# IN THE SUPREME COURT OF IOWA

No. 92 / 06-1466

Filed February 29, 2008

**STATE OF IOWA,**

    Appellant,

vs.

**CODEY THOMAS MASSENGALE,**

    Appellee.

---

Appeal from the Iowa District Court for Iowa County, Douglas S. Russell, Judge.

State appeals district court's decision granting defendant's motion to suppress breath test results in an operating-while-intoxicated case. **AFFIRMED.**

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, and Lewis McMeen, County Attorney, for appellant.

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., for appellee.

**STREIT, Justice.**

Codey Massengale was pulled over for speeding and arrested for driving while intoxicated. He held a commercial driver's license but was driving his noncommercial vehicle at the time of his arrest. He filed a motion to suppress the results of his breath test, challenging the adequacy of the implied consent advisory read to him before he submitted to the breath test. The district court granted Massengale's motion. It found Massengale's consent to the test was involuntary because the advisory was inaccurate. We granted the State's application for discretionary review. Because the advisory read to Massengale violated substantive due process, we affirm the district court.

## I.      Facts and Prior Proceedings.

Just before 1:00 a.m. on April 2, 2006, an Iowa County deputy sheriff noticed a pickup truck speeding down Fourth Street in Victor, Iowa. The deputy shined his flashlight toward the driver to get his attention. Codey Massengale, the driver, slowed down and pulled over.

When Massengale stepped out of his truck, he was unsteady on his feet, had bloodshot, watery eyes, and smelled of an alcoholic beverage. Massengale admitted he had been drinking beer that night. Massengale begged the deputy not to arrest him for drunk driving because he would lose his job. He promised he would never drink and drive again. Massengale said he knew his blood alcohol concentration was over the legal limit. He failed the horizontal gaze nystagmus test administered by the deputy, and a preliminary breath test indicated his blood alcohol concentration exceeded the legal limit. There was an open beer in the truck.

The deputy arrested Massengale for operating a motor vehicle while intoxicated. He transported Massengale to the Iowa County Jail where Massengale was read the "implied consent advisory." Massengale submitted to a Datamaster breath test, which showed his blood alcohol concentration was .143.

The State charged Massengale with operating while intoxicated (OWI), first offense, in violation of Iowa Code section 321J.2 (2005).[1] Massengale pled not guilty. He filed a motion to suppress the breath test results, which the State resisted. Massengale challenged the adequacy of the implied consent advisory given to him before he submitted to the breath test. He alleged the advisory was inaccurate and misleading with respect to the applicable suspension periods to his commercial driving privileges and therefore "violated due process and rendered [his] 'consent' involuntary." Following an evidentiary hearing, the district court granted Massengale's motion. We granted the State's application for discretionary review.

## II. Scope of Review.

We review constitutional claims de novo. *Grovijohn v. Virjon, Inc.*, 643 N.W.2d 200, 202 (Iowa 2002).

## III. Merits.

**A. Iowa's Implied Consent Law.** Iowa's implied consent statute "establishes the basic principle that a driver impliedly agrees to submit to a test [to determine alcohol concentration or presence of a controlled substance] in return for the privilege of using the public highways." *State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980). Iowa Code section 321J.6(1) states:

> A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that

---

[1]All references to the Iowa Code are to the 2005 version unless stated otherwise.

> the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs, subject to this section. . . .

However, a person has the right to withdraw his implied consent and refuse the test. Iowa Code § 321J.9 ("If a person refuses to submit to the chemical testing, a test shall not be given . . . ."). *But see id.* §§ 321J.10, .10A (allowing chemical testing without consent if, among other things, a traffic incident resulting in death or personal injury reasonably likely to cause death occurred). We have previously said the right to refuse the test is a statutory right and not mandated by the provisions of the United States Constitution. *State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981); *see Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (holding taking a blood sample against the OWI defendant's objection did not violate the Fourth or Fifth Amendments of the United States Constitution).

Under Iowa Code section 321J.8, when a peace officer requests a person to submit to chemical testing, the peace officer must advise the person of the consequences of refusing the test as well as the consequences of failing the test. The clear intent of section 321J.8 is to provide a person who has been asked to submit to chemical testing

> a basis for evaluation and decision-making in regard to either submitting or not submitting to the test. This involves a weighing of the consequences if the test is refused against the consequences if the test reflects a controlled substance, drug, or alcohol concentration in excess of the "legal" limit.

*Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 212 (Iowa 2001).

**B.    Due Process.** When Massengale was arrested, he held a commercial driver's license (CDL) but was driving a noncommercial vehicle.

Massengale argues the implied consent advisory violates due process because it misled him with respect to the consequences of his decision on his CDL. *See* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); Iowa Const. art. I, § 9 ("no person shall be deprived of life, liberty, or property, without due process of law"). As a result, Massengale contends the results of the breath test should be suppressed in his OWI trial. Massengale does not clearly articulate whether he is alleging a procedural or substantive due process violation. Nevertheless, his reference to "fundamental fairness" sufficiently alerted us to a potential substantive due process violation.

A substantive due process analysis begins with an identification of the nature of the right at issue. *Miller v. Smokers Warehouse Corp.*, 737 N.W.2d 107, 111 (Iowa 2007). If a fundamental right is involved, the government may not infringe on that right, " 'no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.' " *Bowers v. Polk County Bd. of Supervisors*, 638 N.W.2d 682, 694 (Iowa 2002) (quoting *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447, 123 L. Ed. 2d 1, 16 (1993)). For all other interests, "the Due Process Clause, 'demands no more than a "reasonable fit" between government purpose . . . and the means chosen to advance that purpose.' " *Miller*, 737 N.W.2d at 111 (quoting *Reno*, 507 U.S. at 302, 305, 113 S. Ct. at 1447–49, 123 L. Ed. 2d at 18); *see also State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005) ("If a fundamental right is not implicated, a statute need only survive a rational basis analysis, which requires us to consider whether there is 'a reasonable fit between the government interest and the means utilized to advance that interest.' " (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 238 (Iowa 2002))).

In this case, there is no fundamental right. Rather, at issue is a statutory right to withdraw one's implied consent to chemical testing. Thus, we must determine whether there is a reasonable fit between the legislature's purpose—granting individuals arrested for OWI the right to make a reasoned and informed decision with respect to chemical testing—and the means chosen to advance that purpose—the implied consent advisory. *See State v. Bernhard*, 657 N.W.2d 469, 473 (Iowa 2003) (stating "[t]he ultimate question is whether the decision to comply with a valid request under the implied-consent law is a reasoned and informed decision").

Officer Parsons read the following advisory to Massengale before requesting a breath sample from him:

> The Implied Consent Law requires that a peace officer advise the person of the following:
>
> ***Refusal*** to submit to the withdrawal of a body specimen for chemical testing will result in revocation of your privilege to operate ***a motor vehicle for one year*** if you have not previously been revoked within the previous twelve years under the implied consent or drunk driving laws of this state or two years if you have one or more revocations within the previous twelve years. . . .
>
> Refusal to submit to a blood or urine test for drugs other than alcohol or a combination of alcohol and another drug constitutes a refusal and the above mentioned revocation periods apply.
>
> ***If you consent*** to chemical testing and the test results indicate an alcohol concentration of eight hundredths or more, or if the test results indicate the presence of a controlled substance or other drug or a combination of alcohol and another drug in violation of [Iowa Code section] 321J.2, the department shall revoke your privilege to operate ***a motor vehicle for a period of 180 days*** if you have no revocation within the previous twelve years under the drunk driving or implied consent law, or one year if you have one or more previous revocations under those provisions.

(Emphasis added.)[2]    The parties agree this advisory conforms to the requirements set out in Iowa Code section 321J.8, which specifies what information must be conveyed in the implied consent advisory.[3]

Prior to July 1, 2005, Iowa Code section 321J.8 accurately reflected the status of the laws pertaining to license suspensions for individuals (whether they held commercial or noncommercial driver's licenses) who

---

[2] The advisory also had a separate paragraph entitled "Implied Consent Advisory for Commercial Motor Vehicle Operators Only."  It states:

> If you are operating a commercial motor vehicle and you submit to chemical testing and the test results indicate an alcohol concentration of four hundredths or more OR if you refuse to submit to chemical testing, you shall be disqualified from operating a commercial motor vehicle for a period of one year.

The deputy did not read this paragraph to Massengale because Massengale was not driving a commercial motor vehicle at the time of his arrest.

[3] Iowa Code section 321J.8 provides:

> A person who has been requested to submit to a chemical test shall be advised by a peace officer of the following:
>
> 1.  If the person refuses to submit to the test, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.9.
>
> 2.  If the person submits to the test and the results indicate the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2 or 321J.2A, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.12.
>
> 3. If the person is operating a commercial motor vehicle as defined in section 321.1 and either refuses to submit to the test or submits to the test and the results indicate an alcohol concentration of 0.04 or more, the person is disqualified from operating a commercial motor vehicle for the applicable period under section 321.208 in addition to any revocation of the person's driver's license or nonresident operating privilege which may be applicable under this chapter.
>
> This section does not apply in any case involving a person described in section 321J.7.

were arrested for operating while intoxicated and were requested to submit to chemical testing. Effective July 1, 2005, section 321.208 was amended to provide a one year CDL revocation for an individual who refused or failed chemical testing regardless of whether the individual was operating a commercial or noncommercial motor vehicle. The amendment rewrote subsection (2) which now states:

> A person is disqualified from operating a commercial motor vehicle for one year upon a conviction or final administrative decision that the person has committed any of the following acts or offenses in any state or foreign jurisdiction while operating a commercial motor vehicle **or while operating a noncommercial motor vehicle and holding a commercial driver's license:**
>
> *a.* Operating a motor vehicle while under the influence of an alcoholic beverage or other drug or controlled substance or a combination of such substances.
>
> *b.* Refusal to submit to chemical testing required under chapter 321J.

Iowa Code § 321.208(2) (2007) (emphasis added). Thus an individual, such as Massengale, holding a CDL and driving a noncommercial vehicle will lose his commercial driving privileges for one year if he refuses or fails chemical testing. At the time of Massengale's arrest, neither Iowa Code section 321J.8 nor the implied consent advisory read to Massengale had been amended to reflect the change in section 321.208.

We agree with Massengale the advisory was misleading with respect to the revocation period for commercial driving privileges. The advisory could be interpreted to mean the consequences to one's CDL for refusing or failing chemical testing are the same as the consequences to one's noncommercial driving privileges. In other words, it is reasonable to interpret the phrase—"privilege to operate *a* motor vehicle"—as including the privilege to drive a *commercial* motor vehicle. Thus, an individual in

Massengale's position would likely believe he would lose his CDL for six months if he failed the test and one year if he refused to submit to testing.

The "reasonable fit" test is certainly deferential to the means the government chooses to advance a legitimate purpose. Nevertheless, the means chosen by the government here—a misleading implied consent advisory—does not advance the purpose of the statute—giving arrested individuals information to make "a reasoned and informed decision" with respect to chemical testing. *See Bernhard*, 657 N.W.2d at 473; *see also Teson v. Dir. of Revenue*, 937 S.W.2d 195, 197 (Mo. 1996) (holding warning that "mislead[s] the arrestee into believing that the consequences of refusal are different than the law actually provides" is not "sufficient for purposes of due process").

The State argues Massengale's decision to consent to the breath test was not influenced by his misunderstanding because the revocation period was the same for his CDL whether he refused the test or took it and failed it. We cannot be confident Massengale's decision to submit to testing was unaffected by the State's misleading and inadequate advisory. *Compare Voss*, 621 N.W.2d at 212 (holding results of second chemical test for drugs was admissible even though state trooper did not reread the implied consent advisory in part because "there is no evidence in the record that Voss was confused about the consequences of his decision"), *with McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 855 (Minn. 1991) (holding an implied consent advisory which misinformed defendant that she might be prosecuted for refusing to submit to testing violated due process). After all, the decision of whether to submit to testing must be made quickly and "will frequently be made without [the] benefit of counsel." *Voss*, 621 N.W.2d at 212. Moreover, under Iowa law, there are both civil and criminal penalties

for driving under the influence. The department of transportation is required to immediately revoke an individual's driver's license for the specified time if the person refuses to submit to chemical testing or if the person takes the test and fails it. Iowa Code §§ 321J.9, .12. In addition, the State has the authority to prosecute the individual for OWI, which is a serious misdemeanor for the first offense. *Id.* § 321J.2. A person in Massengale's position may decide not to provide the State with evidence to convict him for OWI if he understands he is going to lose his CDL for one year whether he failed or refused the test. *See State v. Moorehead*, 699 N.W.2d 667, 673 (Iowa 2005) (stating "[a] breath test result is important evidence in prosecutions for drunk driving").

The government has a significant interest in reducing the number of highway accidents due to drunk driving. *See Krueger v. Fulton*, 169 N.W.2d 875, 878 (Iowa 1969). Moreover, it is legitimate for the government to encourage individuals to consent to testing by penalizing those who refuse testing. However, neither of these interests will be impinged by an implied consent advisory accurately disclosing the consequences to commercial driving privileges. In fact, since Massengale's arrest, the legislature has amended section 321J.8 to include the correct information.[4]

---

[4]Section 321J.8 now includes the following paragraph:

> *b.* If the person is operating a noncommercial motor vehicle and holding a commercial driver's license as defined in section 321.1 and either refuses to submit to the test or operates a motor vehicle while under the influence of an alcoholic beverage or other drug or controlled substance or a combination of such substances, the person is disqualified from operating a commercial motor vehicle for the applicable period under section 321.208 in addition to any revocation of the person's driver's license or nonresident operating privilege which may be applicable under this chapter.

2007 Iowa Acts ch. 69.

**IV.    Conclusion.**

Under the circumstances, we find a reasonable fit lacking between the government's purpose in granting OWI suspects the right to make a reasoned and informed decision and the implied consent advisory given in this case.    Massengale's decision to consent to the breath test was not reasoned and informed because the implied consent advisory was misleading with respect to the applicable revocation periods for his CDL. The district court properly granted Massengale's motion to suppress.  We need not address Massengale's alternative argument that his consent was involuntary.  We affirm the district court.

**AFFIRMED.**