# IN THE SUPREME COURT OF IOWA

No. 09–0512

Filed April 15, 2011

**STATE OF IOWA,**

Appellant,

vs.

**JUSTIN JOSEPH HUTTON,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Carol L. Coppola, District Associate Judge.

On further review, defendant asserts the results of his breath test should have been suppressed. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, John P. Sarcone, County Attorney, and Daniel J. Rothman, Assistant County Attorney, for appellant.

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., Des Moines, for appellee.

**HECHT, Justice.**

After being charged with operating while intoxicated (OWI) in violation of Iowa Code section 321J.2 (2009),[1] the defendant moved to suppress the results of his breath test. The district court granted his motion, concluding the advisory given by a police officer was misleading and therefore violated section 321J.8, rendered the defendant's consent to the test involuntary, and violated the defendant's substantive due process rights. The State was granted discretionary review, and the court of appeals reversed the district court. On further review, we conclude the breath test results should not have been suppressed and remand for further proceedings.

### I. Background Facts and Proceedings.

After receiving a report of someone passed out in a Ford Bronco in a parking lot, Ankeny police officers found Justin Hutton parked at a Quik Trip shortly after 2:00 a.m. on December 20, 2008. When they spoke with Hutton, the officers suspected he was intoxicated. He admitted he had been drinking and failed several field sobriety tests. A preliminary breath test indicated Hutton's blood alcohol concentration was above the legal limit. He was arrested and taken to the police station.

Although Hutton held a commercial driver's license (CDL), he had been driving a noncommercial vehicle just prior to his arrest. At the station, an officer requested Hutton submit to another breath test and read Hutton an implied consent advisory. Hutton agreed to take the test, which indicated his blood alcohol concentration was .205.

---

[1]The 2009 Iowa Code contains enactments of the general assembly that became effective on or before July 1, 2008.

The State charged Hutton with OWI, first offense, in violation of Iowa Code section 321J.2. Hutton moved to suppress the results of the breath test. The district court granted the motion, concluding the consent advisory was misleading, violating Hutton's substantive due process rights, rendering his consent involuntary, and violating Iowa Code section 321J.8.

The State sought discretionary review, arguing the district court erred in concluding the advisory misstated the law. We granted review and transferred the case to the court of appeals. The court of appeals reversed, determining the advisory did not misstate the law, and remanded for further proceedings. We granted Hutton's application for further review.

## II. Scope of Review.

We review Hutton's claim that the advisory he was given violated Iowa Code section 321J.8 for corrections of errors at law. *State v. Garcia*, 756 N.W.2d 216, 220 (Iowa 2008). His claim that his due process rights were violated will be reviewed de novo. *State v. Massengale*, 745 N.W.2d 499, 500 (Iowa 2008). To assess his claim that his consent was involuntary, we will "evaluate the totality of the circumstances" and review the claim de novo. *Garcia*, 756 N.W.2d at 219.

## III. Discussion.

Iowa Code chapter 321J " 'establishes the basic principle that a driver impliedly agrees to submit to a test [to determine alcohol concentration or presence of a controlled substance] in return for the privilege of using the public highways.' " *Massengale*, 745 N.W.2d at 501 (alteration in original) (quoting *State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980)); *see also* Iowa Code § 321J.6(1). Despite the statutory presumption of consent, a person may refuse to submit to chemical

testing. *See* Iowa Code § 321J.9. However, because there are both administrative and criminal repercussions for submitting to or refusing a chemical test, section 321J.8 requires an officer to advise the person of certain consequences that may result from the decision. *Id.* § 321J.8.

In his motion to suppress, Hutton argued the breath test results should be suppressed because the consent advisory inaccurately represented the consequences of his decision to submit to the test or not. Contending the advisory was misleading, Hutton asserted it violated Iowa Code section 321J.8, caused his consent to be involuntary, and violated his due process rights. The State's response at the district court level and through its application for discretionary review is that the advisory did not misstate the law and so could not have misled Hutton or violated his due process or statutory rights.

**A. Interpretation of Section 321.208.** The relevant statutes have been in flux since 2005. Prior to 2005, a CDL was subject to revocation for one year for offenses committed while operating a commercial vehicle. Iowa Code § 321.208 (2005) (providing for revocation of CDL for one year for, among other things, operating a commercial vehicle while under the influence of alcohol or a controlled substance, operating a commercial vehicle with an alcohol concentration of .04 or more, or refusing to submit to chemical testing). At that time, section 321J.8 required a peace officer to advise a person driving a commercial vehicle that his or her CDL would be revoked for a year if he or she refused testing or submitted to the test and the results indicated a blood alcohol content of .04 or higher. *Id.* § 321J.8 (2005).

Effective July 1, 2005, section 321.208 was amended. The amendments left unchanged the provision that a CDL would be revoked for one year if a person operated a commercial vehicle with an alcohol

concentration of .04 or higher. *Id.* § 321.208(1) (2005 Supp.). However, the amendments provided that a CDL would be revoked for one year if a CDL holder operated either a commercial or a noncommercial vehicle "while under the influence of an alcoholic beverage" or "refus[ed] to submit to chemical testing" while operating a commercial or noncommercial vehicle. *Id.* § 321.208(2) (2005 Supp.). Section 321J.8, the statute imposing the advisory requirement, however, was not amended to reflect the 2005 changes to 321.208 until 2007. Effective July 1, 2007, section 321J.8 was amended to require an officer to advise a person driving a noncommercial vehicle that if he or she refuses testing or "operates a motor vehicle while under the influence of an alcoholic beverage" his or her CDL will be revoked for a year. *Id.* § 321J.8(1)(*c*)(2) (2007 Supp.).

In short, when Hutton was arrested in December 2008, section 321J.8 required he be advised that his CDL would be revoked if he refused the test or if he was found to have operated his vehicle while under the influence of an alcoholic beverage. However, the advisory read to him contained the following language:

> If you hold a commercial driver's license the department will disqualify your commercial driving privilege for one year if *you submit to the test and fail it,* you refuse to take the test, or you were operating while under the influence of an alcoholic beverage or other drug or controlled substance or a combination of such substances.

(Emphasis added.) Although the advisory read to Hutton warned him that his CDL would be revoked for a year if he consented to the test and failed it,[2] section 321.208(2) (the revocation statute) did not at that time

---

[2]Both parties agree that, because Hutton was driving a noncommercial vehicle, in this case a "failed" breath test refers to a result indicating a blood alcohol content of .08 or higher.

explicitly provide for revocation of a CDL for "failing" a chemical test and section 321J.8 (the warning statute) did not require the failure language to be included in the advisory.

Hutton argues that section 321.208(2)(*a*) did not authorize CDL revocation for failing a chemical test while operating a noncommercial vehicle. Hutton maintains that because Iowa law distinguishes between operating a vehicle "under the influence" and failing a chemical test, the plain language of section 321.208(2)(*a*) only authorized revocation if he refused the test or "operate[d a vehicle] while under the influence of an alcoholic beverage." *See* Iowa Code section 321J.2 (2009) (setting forth different alternatives as a basis for a conviction for operating while intoxicated, including *either* operating a motor vehicle "[w]hile under the influence of an alcoholic beverage" *or* while "having an alcohol concentration of .08 or more"). Hutton contends that if the legislature had intended to require revocation of a CDL for operating a noncommercial vehicle and testing above the legal limit, it would have articulated that proposition, just as it did in section 321.208(1)(*a*) (providing for disqualification of CDL for one year if a person "operat[es] a commercial motor vehicle with an alcohol concentration . . . of 0.04 or more"). Because the legislature used different terminology and used terminology that has distinctive legal meaning, Hutton argues it is clear the legislature intended revocation only when it could be established that the person operated a motor vehicle while "under the influence."

The State contends the advisory did not misstate the law. The State maintains that test failure is a ground for CDL disqualification and that any omission in the statute to refer explicitly to test failure is the result of "inartful drafting." The State cites recent amendments to the relevant code sections which explicitly provide for revocation of a CDL for

failing a breath test and asserts these amendments indicate the legislature sought to clarify its intent.[3] The State also emphasizes language from our opinion in *Massengale*, contending we equated "failing" a breath test with driving under the influence of alcohol.

Although we may consider former and subsequent versions of a statute to ascertain the legislature's intent, we only do so when the statutory langauge is ambiguous. *State v. Guzman-Juarez*, 591 N.W.2d 1, 3 (Iowa 1999); *see also State v. Spencer*, 737 N.W.2d 124, 129 (Iowa 2007). A statute is ambiguous if reasonable minds could disagree as to its meaning. *Spencer*, 737 N.W.2d at 129. Ambiguity may arise either from the meaning of particular words or " 'from the general scope and meaning of a statute when all its provisions are examined.' " *Id.* (quoting *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001)).

We do not find the relevant statutory language to be ambiguous in this case. Iowa law has consistently and clearly distinguished between driving with a blood alcohol content that exceeds the statutory threshold and driving while under the influence of alcohol or drugs. Section 321J.2 provides different alternatives to establish a conviction for operating while intoxicated, including *either* operating a motor vehicle "while under the influence of an alcoholic beverage" *or* while "having an alcohol concentration of .08 or more." Iowa Code § 321J.2. Notably, section 321.208 also distinguished between driving with a blood alcohol

---

[3]In 2009, the legislature amended both sections 321.208 and 321J.8. Section 321.208 now provides that a CDL holder is disqualified from driving for one year if the person operates a noncommercial vehicle "while intoxicated, as provided in section 321J.2, subsection 1." Iowa Code § 321.208(2)(*a*) (2009 Supp.). Section 321J.8(1)(*c*)(2) now provides that a person must be advised that his commercial driving privileges will be revoked for a year if he drives a noncommercial vehicle and "either refuses to submit to the test or submits to the test and the results indicate the presence of . . . an alcohol concentration equal to or in excess of the level prohibited by section 321J.2." *Id.* § 321J.8(1)(*c*)(2).

concentration above a specified limit and driving under the influence. Iowa Code §§ 321.208(1)(*a*) and (2)(*a*) (providing for CDL revocation for driving a commercial vehicle with a blood alcohol concentration in excess of .04 and for driving a noncommercial vehicle while under the influence). Our caselaw, as well, has distinguished between the two alternatives. *See State v. Hubka*, 480 N.W.2d 867, 872 (Iowa 1992) ("[A] person may be convicted of OWI if she operates a motor vehicle either while 'under the influence' of alcohol or while having a blood alcohol content of .10 or more." (Emphasis omitted.)). We have long recognized that the determination of whether a person is under the influence of an alcoholic beverage is focused on the conduct and demeanor of the person, not a numerical test result. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) ("[A] person is 'under the influence' when the consumption of alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions."). We presume, unless clear evidence to the contrary is shown, that the legislature knows the existing state of the law. *State v. Freeman*, 705 N.W.2d 286, 291 (Iowa 2005).

Accordingly, we conclude the version of section 321.208 in effect at the time of Hutton's arrest did not provide for a one-year CDL suspension for "failing" a breath test.[4] This conclusion, however, does not end the analysis.

**B. Did the Advisory Violate Iowa Code Section 321J.8?** As described above, section 321J.8(1)(*c*)(2) required a CDL holder driving a noncommercial vehicle to be advised that his or her CDL would be

---

[4]To the extent any language in *Massengale* contradicts our holding today, we disavow it.

revoked for one year if he or she refused to submit to a chemical test or operated a motor vehicle while under the influence of an alcoholic beverage. *See* Iowa Code § 321J.8(1)(*c*)(2). There is no dispute that the advisory read to Hutton contained these required elements. However, Hutton's advisory included additional language warning him, incorrectly, that his CDL would be revoked for a year if he submitted to the test and failed it.

Section 321J.8(1)(*c*) does not require the warnings to be conveyed in any particular language and does not explicitly prohibit an officer from conveying more information than is required. When assessing a claim that an advisory did not comply with section 321J.8, we consider whether "the statutory purpose was accomplished" under the circumstances. *Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 212 (Iowa 2001). The purpose of section 321J.8's advisory requirement " 'is to provide a person who has been required to submit [to] a chemical test a basis for evaluation and decision-making in regard to either submitting or not submitting to the test.' " *Id.* Under these circumstances, we conclude the purpose of the statute was accomplished when Hutton was advised, as required by section 321J.8(1)(*c*), that he would have his CDL revoked for a year if he refused the test or was operating under the influence.

Under the circumstances presented here, we conclude the inclusion of the additional and inaccurate warning that Hutton's CDL would be revoked if he took and failed the test did not preclude achievement of the statutory purpose. Hutton does not contend the inclusion of this additional warning rendered the advisory confusing or obscured the meaning of the accurate warnings. Hutton, despite being warned that the range of grounds for sanctions was greater than it really

was, consented to the test. Accordingly, the circumstances do not support an argument that the excess verbiage in the advisory induced Hutton to consent to the test. Just as in *Voss,* "there is no evidence in the record that [Hutton] was confused about the consequences of his decision." *Id.* Under these circumstances, we conclude section 321J.8(1)(*c*)(2) was not violated by the advisory in this case.

**C. Did the Advisory Violate Hutton's Due Process Rights?** Hutton contends our decision in *Massengale* requires suppression of his breath test results because his substantive due process rights were violated when he received the misleading and inaccurate advisory.

Massengale, like Hutton, held a CDL but was arrested for driving a noncommercial vehicle while intoxicated. *Massengale,* 745 N.W.2d at 500–01. He was read an implied consent advisory that failed to inform him that his decision to submit to the test would have any consequences on his commercial license. *Id.* at 502. We determined that, although it satisfied the requirements of section 321J.8, the advisory was misleading in its disclosure of the revocation consequences to his commercial driving privileges. *Id.* at 503.[5] Applying a rational basis analysis, we considered whether there was a "reasonable fit" between the government's purpose (to give arrested individuals information to make a reasoned and informed decision) and the means chosen to advance that purpose (an advisory that omitted key information). *Id.* at 503–04. We concluded there was no "reasonable fit" and accordingly Massengale's due process rights had been violated. *Id.* at 505.

---

[5]We concluded because Massengale had not been told anything with regard to the consequences on his CDL that he would have likely been led to believe the consequences to his CDL were the same as the those to his regular driver's license, when in fact they were different. *Massengale,* 745 N.W.2d at 503–04.

Hutton asserts the advisory read to him is analogous to the misleading advisory in *Massengale* because it contained incorrect information and thus did not reasonably further the government's purpose of providing him the information necessary to make a reasoned and informed decision. We do not agree. While it is optimal to include only perfectly accurate information in the advisory, the excess verbiage in the advisory read to Hutton clearly did not induce him to take the test because it overwarned him of the consequences of consenting to the breath test and providing the state with incriminating evidence against him on an OWI charge. Under these circumstances, we conclude there was a reasonable fit between the government's purpose and the means chosen by the State to advise Hutton of the consequences of his decision.

Further, we do not think our decision in *Massengale* stands for the proposition that any flaw in an implied consent advisory constitutes a due process violation. The advisory read to Massengale omitted any and all information about the consequences of his decision on his CDL. We noted that "[w]e cannot be confident Massengale's decision to submit to testing was unaffected by the State's misleading and inadequate advisory." *Id.* at 504. In contrast, the advisory read to Hutton communicated the information required by section 321J.8 and needed by Hutton to make his decision, and we are confident that his decision to submit to testing was unaffected by the incorrect additional information included in the advisory. We cannot ignore the fact that Hutton, despite being inaccurately advised that mere failure of the test would result in the revocation of his CDL, nonetheless submitted to the test. Applying the "reasonable fit" analysis, we conclude the means utilized by the government, an advisory that overstated the range of grounds for CDL revocation for an individual electing to consent to chemical testing but

correctly stated the sanction for refusal to submit to testing, adequately advanced the purpose of "giving arrested individuals information to make 'a reasoned and informed decision.' " *Id.* (quoting *State v. Bernhard*, 657 N.W.2d 469, 473 (Iowa 2003)).

**D. Did the Incorrect Advisory Render Hutton's Consent Involuntary?** Hutton also claims that because the advisory misstated the law, it rendered his consent involuntary. To review Hutton's claim, "we evaluate the totality of the circumstances to determine whether or not the decision was made voluntarily." *Garcia*, 756 N.W.2d at 219. "[T]o be valid, [the driver's consent to testing] must be voluntary and uncoerced." *State v. Gravenish*, 511 N.W.2d 379, 381 (Iowa 1994); *see also Bernhard*, 657 N.W.2d at 473 ("The ultimate question is whether the decision to comply with a valid request under the implied-consent law is a reasoned and informed decision.").

As we have discussed above in the context of Hutton's other claims, we are confident Hutton was not induced to consent to the test by the inclusion of the incorrect excess verbiage in the advisory. The excess verbiage should have discouraged Hutton from submitting to the test as he did. Accordingly, we find no grounds to conclude Hutton's consent was coerced or uninformed. "[N]ot every inaccurate depiction by law enforcement officers that might bear on a subject's election to submit to chemical testing is a basis for suppressing the test results." *Berhnard*, 657 N.W.2d at 473. This is especially true under these circumstances.

**IV. Conclusion.**

We conclude section 321.208(2)(*a*) (2009) did not authorize CDL revocation for "failing" a chemical test while operating a noncommercial vehicle and the advisory read to Hutton overstated the range of grounds

for revocation of his CDL. However, we also conclude that despite the inclusion of incorrect information, the advisory read to Hutton did not violate section 321J.8, did not violate Hutton's due process rights, and did not render his consent involuntary. Accordingly, the results of Hutton's breath test should not have been suppressed, and we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who take no part.