# IN THE COURT OF APPEALS OF IOWA

No. 16-0844
Filed May 3, 2017

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MICHAEL RYAN DERBY,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary, Judge.

Michael Derby challenges the weight of the evidence to support his convictions of operating a motor vehicle while intoxicated and eluding. **AFFIRMED.**

Michael K. Williams of Williams Law Office, Hinton, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Following a trial to the bench, the district court found Michael Derby guilty of operating a motor vehicle while intoxicated (OWI), third offense, and eluding or attempting to elude a pursuing law enforcement vehicle while intoxicated. Derby appeals, arguing the weight of the evidence does not support the court's guilty verdicts. Upon our review, we conclude the district court did not abuse its discretion in finding its guilty verdicts were supported by the greater weight of the evidence. We therefore affirm.

### I. Background Facts and Proceedings.

In the early hours of July 18, 2015, Sioux City police officers in an unmarked drug unit observed a truck with dark tinted windows—owned and driven by Derby—stop for a few minutes in a high drug traffic area and then leave. Officer Josh Tyler, on duty that morning, was informed of the tinted-window violation and the truck's location, and he followed the truck in his marked squad car. Officer Tyler observed Derby commit several moving violations. Officer Tyler activated his lights to stop Derby's truck, and Derby fled. A thirty-minute chase ensued, and at times Derby drove at speeds up to ninety miles per hour. Derby ran through red lights and drove through barricades on the wrong side of a construction zone. He drove through an accident scene. He drove the wrong way onto a highway bypass and proceeded driving the wrong way on the divided highway. While driving, Derby threw items out the truck's window. For safety reasons, Officer Tyler discontinued his pursuit at that time.

Plymouth County Deputy Sheriffs Matt Struve and Paul Betsworth picked up the chase in their separate marked squad cars after Derby crossed into

Plymouth County, and the squad cars' cameras recorded their pursuit. Also involved in the chase was Iowa State Patrol Trooper David Dreasen. With Deputy Betsworth following behind him, Deputy Struve activated his lights in an attempt to stop Derby, but Derby continued on, again driving at speeds up to ninety miles per hour. Because Derby and the officers were approaching Le Mars on Highway 75, the trooper contacted a Le Mars officer to attempt to intercept Derby with stop sticks. Stop sticks were placed, and Derby ran over them, deflating three of his truck's tires. But Derby continued driving, even after his tires started shredding and he was running on the rims. Then the rims started disintegrating, but Derby kept going for approximately ten more miles. He continued to throw items out the window and to swerve. At one point, Derby stuck his leg out the car window and made profane gestures at the officers.

Derby's truck began smoking and decelerating. When the truck slowed to a speed of a few miles per hour, Derby jumped out of it—while the truck was still moving—and continued on foot. Derby was apprehended about fifty yards away. Thereafter, he apologized to the officers and told them "he just wanted to get away." Derby said he "didn't do anything wrong." An officer told Derby he had driven the wrong way on the highway, and Derby responded, "No I wasn't. I didn't think so." Derby said he had had a few hard lemonades. When asked if he put people's lives in danger to avoid a drunk-driving charge, Derby told the officers, "I didn't know if I was above the limit or not, man. . . . I already have three OWIs. . . . I thought I would've got away. I'm not that smart."

Derby was arrested and placed in Deputy Betsworth's squad car, and the audio was recorded. In the car, Derby chastised himself, stating, "That's the

stupidest thing I've ever done," and "[I made a] stupid choice." On the way to the Plymouth County Jail, Derby said he had been drinking at a friend's house and he was trying to get away. At the jail, Trooper Dreason invoked implied consent "[b]ased on . . . the driving and everything that [he] had observed, [he] believed [he] had reasonable grounds to believe that [Derby] was operating a vehicle and was under the influence," but Derby refused to submit to chemical testing.

Derby was ultimately charged with OWI, third or subsequent offense, and eluding or attempting to elude a pursuing law enforcement vehicle while intoxicated. Derby waived a jury trial, and the matter was tried to the district court. All four of the officers testified as to their observations of Derby's driving that morning and his interactions with them thereafter, and all four opined Derby had been under the influence of drugs—presumably methamphetamine—and did not appear to have had a seizure. Also admitted into evidence was the two deputies' squad car videos and the video from Plymouth County Jail's OWI and booking area after Derby arrived.

After the State rested and Derby's motion for acquittal was submitted, he called his mother as a witness to explain his history of having seizures, including one she witnessed on July 1, 2015. She also testified Derby had a history of having anxiety or panic attacks. Derby's mother testified that Derby became disoriented after having a seizure and shook "with his hands and feet, constantly moving." After his July 1 seizure, Derby was prescribed medication, and his mother testified she believed Derby's seizure condition improved.

Additionally, two hospital reports—one from 2009 and the other from July 1, 2015—were admitted into evidence showing Derby had had at least two

seizures. The 2009 report stated Derby had to be restrained because of his combative behaviors, and he was "unable to control his actions, kicking his legs and throwing his arms around close to striking staff." The July 2015 report stated he was taken to the hospital by his mother and Derby reported he had "a kind of generalized seizure" every two-three months, "usually when he [was] in bed." That report also stated Derby was advised not to operate a motor vehicle.

After the defense rested, Derby renewed his motion for a judgment of acquittal, arguing the State did not prove beyond a reasonable doubt that Derby was impaired. Derby maintained that because he did not admit he had used an illegal substance and no chemical test was performed, the State only proved Derby had operated his truck consistent with the mannerisms of his medical conditions. He asserted this circumstantial evidence was not enough to establish his guilt.

Thereafter, the district court denied the motion and found Derby guilty of OWI, third offense, and eluding or attempting to elude a pursuing law enforcement vehicle while intoxicated. Derby again filed a motion in arrest of judgment, "pursuant to [Iowa Rule of Criminal Procedure] 2.24(3)," arguing the court's verdict was not supported by the record. His motion stated he "therefore renew[ed] his motion for a judgment of acquittal" and requested the court dismiss the charges against him. The court denied the motion. Thereafter, the court sentenced Derby to an indeterminate term of incarceration not to exceed five years on each conviction, to be served concurrently, but the court suspended the sentences and placed Derby on probation.

Derby now appeals.

## II.  Discussion.

Derby argues the weight of the evidence does not support the court's guilty verdicts.  He asserts he preserved this claim by filing his motion in arrest of judgment and his notice of appeal.  Conversely, the State points out that filing a motion in arrest of judgment generally does not preserve a weight-of-the-evidence claim but rather a challenge to the sufficiency of the evidence, which is analyzed under a less stringent test.  *See State v. Shorter*, ___ N.W.2d ___, ___ 2017 WL 1367014, at *4 (Iowa 2017); *see also State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (discussing "when and why trial courts must use a sufficiency-of-the-evidence standard or a weight-of-the-evidence standard").  Additionally, the State notes—and we cannot stress this enough—that filing a notice of appeal "has nothing to do with error preservation."  *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (footnote omitted) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court").  Nevertheless, the State concedes the court's oral ruling on the motion considered the "greater weight of the evidence" in denying Derby's motion, minimally preserving the issue for appellate review.  *See State v. Wells*, 629 N.W.2d 346, 355 (Iowa 2001) (explaining "we are guided by what the district court did or purported to do in ruling on the motion" in determining whether error was preserved and not the motion's title).  We therefore address the issue.

"The weight-of-the-evidence standard requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict," including the consideration of the witnesses' credibility. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). Specifically, the court must determine "whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice," not merely "whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict." *Id.* (citations omitted). Our review of the district court's determination is for an abuse of discretion, which "occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See id.*; *State v. Wilson*, 878 N.W.2d 203, 210-11 (Iowa 2016). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014).

The State was required to prove two elements beyond a reasonable doubt to establish Derby committed the crime of OWI: (1) Derby operated a motor vehicle, which was not disputed, and (2) Derby was "under the influence of an alcoholic beverage or other drug," or some combination, or had an excessive blood alcohol level while operating the vehicle.[1] *See* Iowa Code § 321J.2(1); *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004). Thus, the only disputed

---

[1] Derby also admitted the lesser-included offense of eluding was established under Iowa Code section 321.279(2) (2015). However, the State charged—and the district court found Derby guilty—under section 321.279(3), where the offense is elevated to a class "D" felony if, among other things, the "driver is in violation of section 321J.2"; i.e., the driver is intoxicated. Thus, the only disputed issue on both counts was whether the State proved Derby was intoxicated.

issue was whether the State proved beyond a reasonable doubt that Derby was under the influence as alleged. The court found the State met its burden. On appeal, Derby asserts the greater weight of the evidence suggests the verdict rendered was a miscarriage of justice because there was no direct evidence he was under the influence and because his behavior on the night in question was allegedly consistent with his prior behavior when having a seizure.

It is true there is no direct evidence that Derby was under the influence during the relevant night. Nevertheless, our review of the record indicates the greater weight of the evidence supports the district court's verdicts. "Circumstantial evidence is equally probative as direct evidence for the State to use to prove a defendant guilty beyond a reasonable doubt." *State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011). It can even "be more persuasive than direct evidence" in some circumstances. *Id.* Importantly, a person may be found guilty under section 321J.2(1)(a) in the absence of admissible evidence from chemical tests. *See State v. Steadman*, 350 N.W.2d 172, 174 (Iowa 1984). Because a "driver impliedly agrees to submit to a test [to determine alcohol concentration or presence of a controlled substance] in return for the privilege of using the public highways," *see* Iowa Code § 321J.6(1), *State v. Hutton*, 796 N.W.2d 898, 902 (Iowa 2011), the driver's refusal to submit to the test is admissible in determining whether a person committed OWI. *See* Iowa Code § 321J.16; *State v. Bloomer*, 618 N.W.2d 550, 552 (Iowa 2000).

Under the facts of the case, Derby initially committed several moving violations. A moving violation by itself would not be sufficient to establish a driver was driving while intoxicated, and perhaps running a red light or swerving could

be the actions of a person having a seizure. But here, the evidence is not merely the testimony of bystanders who only observed Derby for a short period of time. Rather, the squad-car videos corroborate the officers' account of Derby's actions and support their professional opinions that those actions were those of a person who was under the influence. And considering all of the evidence—the moving violations, then the chase, Derby's bizarre actions during the chase, his refusal to submit to chemical testing after the chase, and his own slurred statements after he was captured concerning his intent and circumstances, including that he had been drinking and that he fled because he had already been convicted of three OWIs and did not know if he was above the legal limit, overwhelming evidence showed Derby was operating his truck while he was under the influence of drugs or a combination of alcohol and drugs. Consequently, we find the district court did not abuse its discretion when it denied Derby's posttrial motion because the greater weight of the evidence supported its verdicts. Accordingly, we affirm the convictions.

**AFFIRMED.**