# IN THE SUPREME COURT OF IOWA

No. 76 / 06–2110

Filed September 19, 2008

**STATE OF IOWA,**

Appellee,

vs.

**HECTOR GARCIA,**

Appellant.

Appeal from the Iowa District Court for Wapello County, Kirk A. Daily, Judge.

Defendant appeals from the judgment and sentence entered upon his conviction for operating while intoxicated, first offense. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Mark Tremmel, County Attorney, and Russell Rigdon, III, Assistant County Attorney, for appellee.

**BAKER, Justice.**

Hector Garcia appeals from the judgment and sentence entered upon his conviction for operating while intoxicated (OWI), first offense. We are asked to decide whether Iowa's implied consent law requires a law enforcement officer who has asked a person suspected of driving under the influence of alcohol to submit to chemical testing to make reasonable efforts to convey the consequences of the person's refusal to submit to the test or failure of the test. We adopt a standard which requires an officer under the circumstances facing him or her at the time of the arrest to utilize methods which are reasonable and would reasonably convey Iowa's implied consent warnings.

I. **Background Facts and Proceedings**.

At approximately 4:03 p.m. on January 27, 2006, Ottumwa Police Officer Becky Strunk was dispatched to investigate a report of a male slumped over the steering wheel of a truck. According to the report, the truck had been in the parking lot of a Casey's carwash "for a while." Upon arrival, Officer Strunk observed the truck parked at the vacuums, with its engine running. Strunk observed Hector Garcia in the truck, with his eyes closed. When Strunk knocked on the window of the truck, Garcia did not respond.

Officer Strunk opened the door and told Garcia who she was. She observed an open can of Bud Light in the cup holder closest to Garcia. When Garcia still did not wake up after she opened the door and spoke to him, Strunk shook Garcia to wake him. Strunk asked Garcia if he needed an ambulance, and he responded that he was fine, he had just been working and was tired. While talking to Garcia, Strunk smelled the odor of an alcoholic beverage on his breath and observed that Garcia had bloodshot, watery eyes. According to Strunk, Garcia's English was "not

real clear," but she could understand him, and he seemed to understand her.

Officer Strunk asked Garcia to step out of the truck to perform field sobriety tests. She asked him if he wore contact lenses or glasses. He responded that he did not and reached for the sunglasses on the dashboard, stating those were the only glasses he wore. Garcia failed the horizontal gaze nystagmus (HGN) test. He refused to take any more tests, stating there was no problem. Strunk asked Garcia to take a preliminary breath screening test. According to the police report, Strunk held a wrapped straw to her mouth and explained to Garcia that she wanted him to blow steadily through the tube. At approximately 4:15 p.m., Garcia performed the preliminary screening breath test, which registered a breath alcohol concentration (BAC) of .198.

Strunk placed Garcia under arrest. According to Strunk's testimony, when Garcia was being arrested and was told his vehicle would be towed, he gave Strunk the names and telephone numbers of persons to contact to come and get the truck.

Strunk transported Garcia to the Wapello County jail. At approximately 5:10 p.m., Strunk attempted to read Garcia his *Miranda* rights, and he advised her that he did not understand English. She then gave him a copy of his *Miranda* rights in Spanish. Garcia signed a form, written in English, which listed his *Miranda* rights. Strunk then read Garcia the implied consent advisory in English, and she asked him if he understood. Garcia said that he would do what Strunk wanted, "no problem." Garcia signed the Iowa Department of Transportation "Request and Notice Under Iowa Code Chapter 321J/Section 321.208" form, written in English, which stated in pertinent part that he consented to give a sample of his breath. Garcia submitted to a

Datamaster breath test, which registered his BAC at .144. No attempts were made to communicate the implied consent advisory to Garcia in Spanish. Garcia testified that he signed the implied consent advisory "because the official told [him] to sign" and that he understood nothing that was written on the form. At approximately 5:24 p.m., Strunk read Garcia his notice of revocation.

On February 7, 2006, Garcia was charged by trial information with OWI in violation of Iowa Codes section 321J.2(1)(*a*) and (*b*) (2005). Garcia filed a written arraignment and plea of not guilty, in which he waived his right to a speedy trial and stated that he did not read or understand English. Garcia applied for a court-appointed interpreter, which the court granted.

On August 22, 2006, Garcia filed a motion to suppress the breath test results, which the State resisted. Garcia challenged the adequacy of the implied consent advisory given to him, asserting that he did not comprehend the advisory when he signed it. A hearing on the motion to suppress was held on September 14. On October 2, the district court issued an order denying the motion. The court found Officer Strunk's testimony that Garcia was able to answer her questions in English to be credible and concluded that Garcia "has some understanding of English."

Garcia waived his right to a jury trial. On November 22, the case was submitted to the district court as a bench trial based on the minutes of testimony, depositions, and the record made at the motion-to-suppress hearing. The court found Garcia guilty of OWI. During the trial, Garcia renewed his motion to suppress, which the court denied. The court sentenced Garcia to serve two days in the county jail and pay a $1,000 fine. Garcia appeals from his conviction and sentence, contending the district court erred in denying his motion to suppress.

## II.     Scope of Review.

When a defendant who has submitted to chemical testing asserts that the submission was involuntary, we evaluate the totality of the circumstances to determine whether or not the decision was made voluntarily. *State v. Gravenish*, 511 N.W.2d 379, 381 (Iowa 1994). Our review is de novo. *Id.* While we are not bound by the district court's factual findings, we give considerable weight to the court's assessment of the voluntariness of the defendant's submission to the chemical test. *Id.*

To the extent the issue presents a question of statutory interpretation, our review is for correction of errors at law. *State v. Palmer*, 554 N.W.2d 859, 864 (Iowa 1996).

## III.    Reasonable Effort to Convey Implied Consent Warning.

Garcia contends he did not voluntarily submit to the breath test because he does not have a sufficient understanding of the English language to have made a reasoned and informed decision under the circumstances of this case. The issue presented is whether Iowa Code section 321J.8 requires an officer who has asked a person suspected of driving under the influence of alcohol to submit to chemical testing to make reasonable efforts to convey the consequences of the person's refusal to submit to the test or his failure of the test.

**A.  Implied Consent.** Iowa Code section 321J.2(1) makes it an offense to operate a motor vehicle while under the influence of an alcoholic beverage or while having an alcohol concentration of .08 or more. "[C]hapter 321J provides authority for chemical testing of bodily substances from persons suspected of driving while intoxicated." *Palmer*, 554 N.W.2d at 861; *see also* Iowa Code § 321J.6.

Iowa's implied consent law "is based on the premise 'that a driver impliedly agrees to submit to a test in return for the privilege of using the

public highways.'" *State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981) (quoting *State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980)). The law "was enacted to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers." *State v. Wallin*, 195 N.W.2d 95, 96 (Iowa 1972). "Implied consent procedures are reasonably calculated to further this objective." *Knous*, 313 N.W.2d at 511–12.

While under the implied consent statute a person impliedly agrees to submit to chemical testing, a person "has the right to withdraw his implied consent and refuse the test." *State v. Massengale*, 745 N.W.2d 499, 501 (Iowa 2008); *see also* Iowa Code § 321J.9 ("If a person refuses to submit to the chemical testing, a test shall not be given . . . ."). To be valid, the driver's decision to consent to testing must be voluntary, i.e., freely made, uncoerced, reasoned, and informed. *Gravenish*, 511 N.W.2d at 381; *see also State v. Bernhard*, 657 N.W.2d 469, 473 (Iowa 2003) (noting "[t]he ultimate question is whether the decision to comply with a valid request under the implied-consent law is a reasoned and informed decision" and applying the standard to "conclude that defendant's consent to a chemical test was voluntary"). To summarize, a driver's consent to testing may be considered involuntary, and therefore invalid, if it is coerced or if the driver is not reasonably informed of the consequences of refusal to submit to the test or failure of the test. Here we are concerned only with whether Garcia's consent was reasoned and informed.

Pursuant to Iowa Code section 321J.8:

A person who has been requested to submit to a chemical test shall be advised by a peace officer of the following:

1. If the person refuses to submit to the test, the person's driver's license or nonresident operating privilege will be

revoked by the department as required by and for the applicable period specified under section 321J.9.

2. If the person submits to the test and the results indicate the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2 or 321J.2A, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.12.

Under section 321J.8, when a person has been asked to submit to chemical testing, the officer must advise the person of the consequences of refusing to submit to the test and the consequences of not passing the test, including the potential periods of license revocation. *Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 211 (Iowa 2001).

The clear intent of section 321J.8 is to provide a person who has been asked to submit to chemical testing "a basis for evaluation and decision-making in regard to either submitting or not submitting to the test. This involves a weighing of the consequences if the test is refused against the consequences if the test reflects a controlled substance, drug, or alcohol concentration in excess of the 'legal' limit."

*Massengale*, 745 N.W.2d at 501 (quoting *Voss*, 621 N.W.2d at 212).

**B. Reasonable Efforts.** The primary issue on appeal is whether Iowa Code section 321J.8 requires a law enforcement officer to make reasonable efforts to convey the implied consent warning to a non-English speaking person. Other jurisdictions have taken differing approaches to resolving this issue. In those states where the primary purpose of the implied consent law is to aid the state in making its highways safe by encouraging suspected persons to take the test, courts have determined the statute requires only the warning be given, not that the driver understand the consequences of refusal. *See, e.g., Furcal-Peguero v. State*, 566 S.E.2d 320, 324 (Ga. Ct. App. 2002); *People v. Wegielnik*, 605 N.E.2d 487, 489–90 (Ill. 1992). Other states have determined that the driver need only understand that he or she has been

asked to take a test. There is no requirement that the driver understand the consequences of refusal or be able to make a reasoned judgment. *See, e.g., Yokoyama v. Comm'r of Pub. Safety*, 356 N.W.2d 830, 831 (Minn. Ct. App. 1984); *Martinez v. Peterson*, 322 N.W.2d 386, 388 (Neb. 1982).

Garcia urges us to apply the reasonableness standard adopted by the Wisconsin Supreme Court to determine whether a person's consent to a chemical test is valid. *See State v. Piddington*, 623 N.W.2d 528 (Wis. 2001). Under Wisconsin law, a law enforcement officer who asks a person to submit to chemical testing must warn the person of the potential revocation consequences of refusing to submit to the test or of failing the test. *Id.* at 534 n.2 (citing Wis. Code § 343.305(4) (1995-96)).

> The purpose behind [Wisconsin's] implied consent law is to combat drunk driving by "facilit[ating] the gathering of evidence against drunk drivers. . . ." The specific objective of Wis. Stat. § 343.305(4) within the implied consent statutory scheme is to "advise the accused about the nature of the driver's implied consent."

*Id.* at 538 (citations omitted). The Wisconsin Supreme Court held that the law "requires the arresting officer under the circumstances facing him or her at the time of the arrest, to utilize those methods which are reasonable, and would reasonably convey the implied consent warnings." *Id.* at 534–35.

We have stated the purpose of Iowa's implied consent statute "is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." *Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967). We have also stated the purpose of the statute is "provide a person who has been asked to submit to chemical testing 'a basis for evaluation and decision-making in

regard to either submitting or not submitting to the test.'" *Massengale*, 745 N.W.2d at 501 (quoting *Voss*, 621 N.W.2d at 212).

Like Wisconsin's implied consent law, the purpose of Iowa's implied consent statutory scheme is to combat drunk driving, but the purpose of Iowa Code section 321J.8 within the statutory scheme is to advise accused drivers of the consequences of submitting to or failing the chemical test. *See Piddington*, 623 N.W.2d at 538. The purpose of providing the accused driver a basis for evaluation and decision-making "is fulfilled, rather than undermined, if the law enforcement officer must use reasonable methods that reasonably convey the implied consent warnings, in consideration of circumstances facing him or her." *Id.* at 540. This interpretation allows a person asked to submit to chemical testing to be "properly advised under the implied consent law, without raising the specter of subjective confusion." *Id.*

Because the purpose of Iowa Code section 321J.8 within the statutory scheme is to advise accused drivers of the consequences of submitting to or failing the chemical test, we adopt the Wisconsin standard which requires the officer "under the circumstances facing him or her at the time of the arrest to utilize those methods which are reasonable, and would reasonably convey the implied consent warnings." *Id.* at 534–35. In determining what is reasonable, a pragmatic approach must be utilized.

> That a law enforcement officer must use reasonable methods to convey the implied consent warnings does not mean the officer must take extraordinary, or even impracticable measures to convey the implied consent warnings. Reasonableness under the circumstances also requires consideration of the fact that alcohol dissipates from the blood over time, particularly after the subject has stopped drinking. The State cannot be expected to wait indefinitely to obtain an interpreter and risk losing evidence of intoxication. Such would defeat, rather than advance, the

intent of the implied consent law "to facilitate the gathering of evidence against drunk drivers in order to remove them from the state's highway." The approach we adopt today only ensures that barriers which may affect the arresting officer's ability to reasonably convey the implied consent warnings to an accused driver . . . are taken into account and accommodated as much as is reasonable under the circumstances.

*Id.* at 542 (citations omitted). "Although making an interpreter available when possible is desirable, finding an interpreter is not absolutely necessary and should not 'interfere with the evidence-gathering purposes of the implied consent statute.'" *Yokoyama*, 356 N.W.2d at 831 (citations omitted).

**C. Applicable Standard.** The Wisconsin court determined that in judging the reasonableness of the efforts to convey the implied consent warnings an objective standard is to be used.

[T]he determination of whether the law enforcement officer reasonably conveyed the implied consent warnings is based upon the objective conduct of that officer, rather than upon the comprehension of the accused driver. This approach ensures that the driver cannot subsequently raise a defense of "subjective confusion," that is, whether the implied consent warnings were sufficiently administered must not depend upon the perception of the accused driver.

*Piddington*, 623 N.W.2d at 539 (citations omitted).

In determining whether a defendant's waiver is voluntary, knowing, and intelligent, we have employed an objective test. *See State v. Hajtic*, 724 N.W.2d 449, 453 (Iowa 2006). We agree that the test of whether the implied consent warnings were sufficiently administered should be an objective test.

**D. Application of Standard.** We turn then to the question of whether, under the circumstances presented to Officer Strunk, she used those methods which would reasonably convey the implied consent warnings to Garcia. Officer Strunk testified that she could understand

Garcia and he seemed to understand her. There were numerous conversations between Strunk and Garcia with little apparent difficulty in communicating. Garcia signed the implied consent form, and he did not indicate that he did not understand. It was not until the motion to suppress that his lack of understanding was raised. Applying the "reasonable efforts" standard to the facts and circumstances of this case, we hold that Officer Strunk, under the circumstances facing her at the time of the arrest, utilized reasonable methods to reasonably convey the implied consent warnings to Garcia.

**IV.    Conclusion.**

We adopt a reasonableness standard, which requires a law enforcement officer who has asked a person suspected of driving under the influence of alcohol to submit to chemical testing, under the circumstances facing the officer at the time of the arrest, to utilize those methods which are reasonable and would reasonably convey Iowa's implied consent warnings. In this case, Officer Strunk utilized reasonable methods to reasonably convey the implied consent warnings to Garcia. We therefore affirm the district court's denial of Garcia's motion to suppress.

**AFFIRMED.**