# IN THE COURT OF APPEALS OF IOWA

No. 20-1301
Filed October 6, 2021

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ADAM DONALD OSCAR MELCHERT,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Linn County, Casey D. Jones, District

Associate Judge.


      Adam Melchert appeals his conviction for operating while intoxicated.

**AFFIRMED.**


      Alexander S. Momany and Mark D. Fisher of Howes Law Firm, PC, Cedar

Rapids, for appellant.

      Thomas J. Miller, Attorney General, and Katie Krickbaum (until withdrawal)

and Kevin Cmelik, Assistant Attorneys General, for appellee.


      Heard by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

Adam Melchert appeals his conviction for operating while intoxicated (OWI). He claims (1) the district court erred in denying his motion to suppress because his implied consent revocation was not voluntary and (2) Iowa Code section 907.3(1)(a)(6)(d) (2019) violates the state and federal constitutions' right to equal protection. We affirm.

**I. Background Facts and Prior Proceedings**

In the early morning hours of March 21, 2019, police responded to a Burger King drive through. There, they found Melchert unresponsive in the driver's seat of a vehicle while its engine ran. When Melchert came to, he did not immediately respond to the officer knocking on his window. Instead, he started to pull forward toward the drive-through window. Once Melchert stopped and engaged with officers, he repeatedly tried—but failed—to hand over his license. Several times he handed an officer a credit card, seemingly believing he was providing his license. Melchert was able to produce his license only after an officer identified it for him in his stack of cards. Then officers subjected Melchert to field sobriety testing. Melchert explained he thought his medication reacted with alcohol he consumed. After police administered a preliminary breath test, they arrested him for OWI.

Once at the police station, an officer read Melchert the implied consent advisory and allowed him to look over it himself. Melchert expressed his desire to consult an attorney "prior to consenting." Officers agreed he could contact an attorney. Melchert called his attorney's office; but it was after work hours, and he did not reach the attorney. He reiterated that he wanted to talk to his attorney

before he "did anything." An officer explained that Melchert needed to test or refuse relatively soon ("tonight before business hours"), but Melchert again stated he wanted to "talk to her before [he] did anything." Melchert maintained he wanted to talk to counsel before refusing or submitting to Datamaster testing because of his concerns about his medication mixing with alcohol.

Officers suggested Melchert might be able to reach someone who had his attorney's personal phone number. Melchert stated he knew of no one who would have his attorney's phone number. Officers again reminded him of the time constraints on testing. Melchert asked the officers how to reach another attorney, but they explained it is often difficult for people to reach counsel after hours without an attorney's personal phone number. Melchert reiterated he would not make a decision without consulting an attorney. Officers determined Melchert refused testing.

The State charged Melchert with OWI. Melchert filed a motion to suppress his refusal to submit to Datamaster testing. Melchert argued his refusal was not voluntary because he was not informed "a refusal would necessarily, unequivocally result in the loss of any future opportunity to request let alone receive[] a deferred judgment and potentially avoid a permanent, public criminal record." Melchert also argued Iowa Code section 907.3(1)(a)(6)(d), which prohibits courts from granting deferred judgments to individuals who refused testing, violates the state and federal constitutions' right to equal protection. The State resisted. Following a hearing, the court denied the motion to suppress. Melchert sought discretionary review, which the supreme court denied. Then Melchert agreed to a bench trial on the minutes, and the court found him guilty. Melchert appeals.

**II. Discussion**

    *A. Voluntariness*

    We first address Melchert's contention that his refusal to test was not voluntary and, therefore, should have been suppressed. We review challenges to the voluntariness of a defendant's refusal or submission to chemical testing de novo. *State v. Garcia*, 756 N.W.2d 216, 219 (Iowa 2008). "While we are not bound by the district court's factual findings, we give considerable weight to the court's assessment of the voluntariness of the defendant's [refusal] to the chemical test." *Id.*

    Iowa Code section 321J.6(1) provides in part:

> A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs, subject to this section.

This is commonly referred to as the implied consent law. "Iowa's implied consent law is based on the premise that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways." *Id.* at 220 (quotation and internal quotation marks omitted). "The law was enacted to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers." *Id.* (quotation and internal quotation marks omitted). "Implied consent procedures are reasonably calculated to further this objective." *Id.* (citation omitted).

Although a driver impliedly consents to testing, the driver also has the right to withdraw that consent. *See* Iowa Code § 321J.9(1) ("If a person refuses to submit to the chemical testing, a test shall not be given . . . ."). "Yet refusal can have serious consequences." *State v. Caldwell*, No. 19-0894, 2021 WL 592747, at *7 (Iowa Ct. App. Jan. 21, 2021). For instance, "[i]f implied-consent is properly invoked and the driver still refuses to submit, the Iowa Department of Transportation must ("shall") revoke their driver's license for at least a year." *Id.* (citing Iowa Code § 321J.9(1)). So, "[t]o be valid, the driver's decision to [refuse or] consent to testing must be voluntary, i.e., freely made, uncoerced, reasoned, and informed." *Garcia*, 756 N.W.2d at 220. "[I]f the driver is not reasonably informed of the consequences of refusal to submit to the test or failure of the test," then the driver's decision is not voluntarily made. *See id.*

The question here is: What does the driver need to know to be "reasonably informed"? Melchert argues he was not reasonably informed because officers did not explain that his refusal to test would trigger section 907.3(1)(a)(6)(d), which prohibits a sentencing court from granting a deferred judgment to a defendant who refused testing.[1] But his argument hits a critical snag. Iowa Code section 321J.8(1) specifically states what information must be provided to an individual before they consent to or refuse testing.[2] And section 321J.8(1) makes

---

[1] To the extent Melchert argues he should have been advised that his refusal could be used against him, we agree with the State that the claim was not raised in the district court. So we will not address it for the first time on appeal. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). Moreover, the record shows Melchert was informed it could be used as evidence against him.

[2] Melchert does not argue police did not comply with section 321J.8(1), and during oral argument counsel agreed the information contained in section 321J.8(1) should be shared with drivers.

no mention of section 907.3(1)(a)(6)(d) or the impact of refusal to test on a defendant's eligibility for a deferred judgment.[3]  Moreover, our supreme court has rejected prior arguments that law enforcement officers must inform drivers of consequences other than those specifically listed in section 321J.8(1).  *See State v. Kentner*, 562 N.W.2d 431, 433 (Iowa 1997); *Primm v. Iowa Dep't of Transp.*, 561 N.W.2d 80, 81 (Iowa 1997).  In *Kentner*, the supreme court explained,

> The advice form is already quite lengthy.  If we were to require additional advice on matters not expressly required by section 321J.8, the only way for an officer to be certain to comply with section 321J.8 would be to read Iowa Code sections 321J.9 and 321J.12 in their entirety.  Such a lengthy statement of "rights" would obscure the key revocation information required by section 321J.8 and would in all likelihood further confuse the subject.

562 N.W.2d at 433*.*  We see no reason to deviate from this logic and obligate law enforcement to provide additional information beyond what is already required by section 321J.8.   Rather, we believe a driver is reasonably informed of the consequences of testing or refusal if they have been advised of the consequences identified in section 321J.8(1).  Because Melchert received that advisement, his voluntariness challenge cannot succeed.[4]  *See Garcia*, 756 N.W.2d at 219–20.

Moreover, as the State points out, even assuming that police should have provided Melchert additional information, "not every inaccurate depiction by law enforcement officers that might bear on a subject's election to submit to chemical testing is a basis for suppress[ion]."  *See State v. Bernhard*, 657 N.W.2d 469, 473

---

[3] Iowa Code section 321J.2(3)(b)(2)(d) references section 907.3 and also prohibits the court from granting a deferred judgment when the defendant refused testing.
[4] Melchert's voluntariness challenge turns entirely on whether he was reasonably informed.  He does not argue he was coerced or that other circumstances made his decision involuntary.

(Iowa 2003). So suppression is not necessary when the driver would have reached the same decision to consent to or refuse testing. *See State v. Hutton*, 796 N.W.2d 898, 906 (Iowa 2011). Here, Melchert made clear he would not make any decision until his spoke to counsel. This served as a de facto refusal given the time constraints on testing and the time of day. *Cf.* Iowa Code § 321J.6(2) ("If the peace officer fails to offer a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321J.9."). And the record makes clear he would not have changed course had officers informed him of the impact that refusal would have on his eligibility for a deferred judgment. So suppression would be unnecessary regardless of whether officers should have advised him of section 907.3(1)(a)(6)(d). The district court was right to deny the motion to suppress.

*B. Equal Protection*

Melchert also argues section 907.3(1)(a)(6)(d) violates both the state and federal constitutions' right to equal protection. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. We review constitutional challenges to our statutes de novo. *State v. Kilby*, 961 N.W.2d 374, 377 (Iowa 2021).

> In doing so, we must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, the challenger must refute every reasonable basis upon which the statute could be found to be constitutional. Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*Id.* (citation and internal quotation marks omitted).

The Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Iowa Constitution provides, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. "Generally, '[w]e apply the same analysis in considering the state equal protection claim as we do in considering the federal equal protection claim.'" *State v. Tucker*, 959 N.W.2d 140, 146 (Iowa 2021) (alteration in original) (citation omitted). "At its core, the federal and state 'equal protection guarantee requires that laws treat all those who are similarly situated with respect to the purposes of the law alike.'" *Id.* (citation omitted).

"The first step in our equal protection analysis is to determine whether the challenged law makes a distinction between similarly situated individuals with respect to the purposes of the law." *Id.* "This is a threshold test." *Id.* "If the defendant 'cannot show as a preliminary matter that [they are] similarly situated, [we] do not further consider whether . . . different treatment under a statute is permitted.'" *Id.* (second alteration in original) (citation omitted).

Melchert does not address this threshold requirement in his appellant brief. He addresses it in his reply brief to rebut the State's argument. So we question whether we should consider his equal protection argument at all. *See Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018) (recognizing we generally do not consider arguments raised for the first time in a reply brief).

Assuming we can address Melchert's argument, we conclude Melchert cannot satisfy this threshold test. He posits, "There is only one class of persons in existence relative to these issues and that is persons under investigation for [OWI] per Iowa Code [section] 321J.2." So, he reasons, everyone in this "one class of persons in existence" are similarly situated. We disagree. In reality, "persons under investigation for [OWI]" split themselves into two separate classes by deciding whether to submit to or refuse testing.[5] That decision creates a clear divide. As the State points out, "One group has continued to consent to testing in exchange for the privilege of driving on Iowa roads. The other has revoked that consent." One group has agreed to comply with processes that make OWI investigations easier and more streamlined, while the other has not. These are two distinct groups. They are not similarly situated. *Cf. United States v. Gallegos*, 480 F.3d 856, 859 (8th Cir. 2007) (determining two defendants were not similarly situated when one cooperated with authorities and the other did not).

Because Melchert cannot satisfy this threshold requirement, we need not proceed further with his equal protection claim.

**AFFIRMED.**

---

[5] Melchert conceded as much at oral argument when he argued persons are similarly situated at the time they are asked to consent or refuse but are no longer similarly situated after they make their decision. Here, section 907.3(1)(a)(6)(d) comes into play following conviction, long after one must consent to or refuse chemical testing. So by Melchert's own reasoning, persons who consented to testing are not similarly situated to those who refused with respect to section 907.3(1)(a)(6)(d).